ON MOTION FOR REHEARING
¶ 1. The appellant's motion for rehearing is denied. The previous opinions are withdrawn and these opinions are substituted therefor.
 ¶ 2. Joe Solomon Pruitt appeals from his conviction on a charge of armed robbery in the Circuit Court of Monroe County, Mississippi, alleging a Batson violation in the selection of the jury. Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Finding the trial court correctly found no purposeful discrimination, we affirm.
 FACTS ¶ 3. Loomis Fargo fired Alonzo Jones from employment as a delivery driver. Jones recruited his friend Joe Solomon Pruitt and James Person to rob the Renasant Bank in Smithville, Mississippi, one of the banks on his former route. Jones knew the layout of the bank, the Loomis delivery schedule, and that two women staffed the bank during the day. Approximately a week after Jones was fired, Pruitt, Jones, and Person drove from Memphis, Tennessee, to the Renasant Bank in Smithville on the Loomis delivery day. Pruitt and Person, masked and gloved, entered the bank and forced the two employees to place the bank's cash into a backpack and a sack. Pruitt was armed with a handgun. Pruitt and Person left the bank and entered the car, where Jones waited. As they were leaving, a dye pack in Person's sack exploded, filling the car with smoke. He tossed the bag out the car window, and they fled back toward Memphis.
 ¶ 4. At a four-way stop near Fulton, Mississippi, a sheriff's deputy saw the bank robbers and followed them as they entered Highway 78. Next, a state trooper spotted them on the highway and crossed the median to tail them, along with the deputy. Jones exited the highway at the next exit. He discovered the exit had no outlet, and he stopped the car beside a wooded area. The three men left the car *Page 942 
and fled into the woods. After wandering around, they came across a shed next to a white house, where they hid and slept. The following day, they tried to leave in a second car, which became stuck in a ditch. They returned to the white house and asked the resident for assistance. The resident's son was attempting to free the vehicle when law enforcement officers arrived at the house and surrounded it. The bank robbers surrendered. Some of the stolen cash was found hidden inside a couch in the house where the robbers were apprehended.
 DISCUSSION ¶ 5. Pruitt argues one issue on appeal.[1] WHETHERTHE TRIAL COURT ERRED IN ACCEPTING THE RACE-NEUTRAL REASONSGIVEN BY THE STATE AFTER A BATSONOBJECTION REGARDING THREE JURORS.
 ¶ 6. Pruitt's only issue raised on appeal is a challenge to the sufficiency of the State's race-neutral reasons for peremptorily striking three African-American members of the venire. After the circuit court struck some members of the venire for cause and held a brief discussion about the number of peremptory strikes available to each side, the court stated the following: "If you will, I will be in chambers. As soon as you get a jury selected, I want to — I want to seat the jury promptly at twelve o'clock, noon." The court then recessed.
 ¶ 7. After the recess, the court came back on the record with the question, "All right. Do we have a jury yet?" Pruitt immediately raised a Batson challenge, stating that the State had struck three African-Americans on the first panel of the venire: jurors 1, 2 and 14. Batson,476 U.S. at 96-98, 106 S.Ct. 1712. The State responded by stating that it tendered the panel with four African-Americans among the twelve jurors and volunteered its reasons for the peremptory strikes. The circuit court ruled:
 [T]hat the . . . there is not a — or was not a pattern of discrimination by the State in Striking Jurors 1, 2, and 14. . . . There is no pattern of discrimination established to even require the State to give race-neutral reasons. However, they have given what the Court considers race-neutral reasons for these strikes. The Court does not see these reasons as pre-textual, not race-based. . . . So the defendant's motion is overruled.
The jury consisted of five white males, two white females, one African-American male, three African-American females, and one female juror whose race was not identified for the record. Two white males served as alternates.
 ¶ 8. This Court reviews a trial court's ruling on aBatson challenge with great deference and will not overturn the trial court's ruling unless it is clearly erroneous or against the overwhelming weight of the evidence.Flowers v. State, 947 So.2d 910, 917 (Miss. 2007).See also Batson, 476 U.S. at 98 n. 21, 106 S.Ct. 1712;Chisolm v. State, 529 So.2d 630, 633 (Miss. 1988);Lockett v. State, 517 So.2d 1346, 1352 (Miss. 1987). When addressing a Batson challenge, a trial court employs a three-step procedure: (1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose; (2) once the defendant has made out a prima facie case, the burden shifts to *Page 943 
the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. Johnson v.California, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416,162 L.Ed.2d 129, 138 (2005). The burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination. Hicks v.State, 973 So.2d 211, 219 (Miss. 2007) (citing Berry v.State, 802 So.2d 1033, 1042 (Miss. 2001)).
 ¶ 9. Pruitt argues the State's reasons for striking the three jurors were pretexts for racial discrimination. The State responds by arguing the reasons are immaterial because the trial court ruled Pruitt failed to make a prima facie showing of purposeful discrimination. In the alternative, the State argues the reasons offered by the prosecutors are race-neutral and demonstrate no pretext for racial discrimination. We will examine each of the State's arguments.
 ¶ 10. This Court must first determine whether the issue of Pruitt establishing a prima facie case was dispositive. InHernandez v. New York, a plurality opinion, the United States Supreme Court considered "the proper application ofBatson." Hernandez, 500 U.S. 352, 355, 111 S.Ct. 1859,114 L.Ed.2d 395 (1991). The defendant made a Batson
objection; the State volunteered its race-neutral reasons before the trial court ruled on whether the defendant had established a prima facie case; and the trial court rejected the defendant's challenge. Id. at 356-58,111 S.Ct. 1859. The Supreme Court explained that with regard to theBatson three-step procedure, "where the [State] has done everything that would be required of him if the [defendant] had properly made out a prima facie case, whether the [defendant] really did so is no longer relevant."Id. (citing U.S. Postal Serv. Bd. of Governors v.Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403
(1983)). The Supreme Court specified that:
 [o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.
Hernandez, 500 U.S. at 359, 111 S.Ct. 1859,114 L.Ed.2d 395.
 ¶ 11. The State argues that Hernandez is inapplicable to the case at hand because in Hernandez, the trial court never ruled on whether the defendant had established a prima facie case. In the case at hand, the trial court did rule that Pruitt had not established a prima facie case. While this distinction is accurate, it does not renderHernandez inapplicable. Under the same facts as the case at hand, this Court has either effectively or explicitly followed the Hernandez procedure.
 ¶ 12. In Foster v. State, this Court effectively followed Hernandez. Foster, 639 So.2d 1263, 1279-1280
(Miss. 1994). In Foster, the trial court ruled that the defendant had failed to establish a prima facie case, required the State to give race-neutral reasons and found that there was no intentional discrimination. Id. at 1279-80.Foster noted that the trial court had ruled that the defendant had failed to establish a prima facie showing of discrimination. Id. at 1279. However, this Court declined to review the trial court's ruling on the defendant's prima facie case. Id. Instead, this Court proceeded to address the State's race-neutral reasons and the trial court's ruling on the ultimate question of intentional *Page 944 
discrimination.[2] Id. at 1279-80.Foster did not cite Hernandez, but in accord with Hernandez, it declined to address the trial court's determination of whether the defendant had established a prima facie case, focusing on the propriety of the trial court's ruling with regard to the ultimate question.Id. at 1279-80.
 ¶ 13. In Manning v. State, this Court explicitly followed Hernandez. Manning v. State, 726 So.2d 1152
(Miss. 1998), overruled on other grounds by Weatherspoon v.State, 732 So.2d 158, 162 (Miss. 1999). InManning, the trial court ruled that the defendant had failed to establish a prima facie case, required the State to give race-neutral reasons, and found that there was no intentional discrimination. Id. at 1182. On appeal, this Court held that whether the defendant had established a prima facie case was moot under Hernandez, since the State had offered race-neutral reasons and the trial court had ruled on the ultimate question of intentional discrimination.Id. at 1182-83. Like Foster, Manning declined to address the issue of whether a prima facie case has been established. Id. at 1183-84.
 ¶ 14. In the case at bar, the State offered a race-neutral explanation for its peremptory challenges, and the trial court ruled on the ultimate question of intentional discrimination. Therefore, in accordance with our precedent, which follows theHernandez procedure, we decline to address whether the defendant established a prima facie case and proceed to address the propriety of the trial court's ruling on the ultimate question.
 ¶ 15. Pruitt raised a Batson challenge, questioning three strikes exercised by the State. The State offered reasons for each strike. The State explained that it struck juror number one because her jury form indicated that she had short-term employment, lived in a high-crime area, was a single mother, and according to one of the law enforcement officers, had a relative who had been prosecuted in that county. The State struck juror number two based on information from one of the law enforcement officers that this juror had a relative who had been recently prosecuted. The State struck juror number fourteen because she had short-term employment and one of the law enforcement officers informed the prosecutor that the State had prosecuted two of the juror's relatives. The State also noted that it tendered four African-American jurors.
 ¶ 16. Pruitt argued that the State's reasons included several of the five indicia of pretext this Court listed inLynch v. State, 877 So.2d 1254, 1272 (Miss. 2004). The indicia of pretext for use in analyzing race-neutral reasons under Batson are:
 (1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; . . . (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.
Id. Pruitt argued that no juror was questioned at voir dire about the characteristic for which she was struck. Pruitt also argued that there is a lack of record support for whether the State examined the officers' allegations that these jurors were related to individuals formerly prosecuted in that county. Finally, Pruitt argued that living in a high-crime area was a group-based trait. *Page 945 
 ¶ 17. As the State asserts, each of its reasons previously has been held by this Court to be race-neutral. Reasons this Court has accepted as race-neutral include being single with children, having short-term employment, and having a friend or family member charged with a crime. Magee v. State,720 So.2d 186, 188-89 (Miss. 1998). The Court also has held that "living in a `high crime' area" is an acceptable, race-neutral reason. Lynch v. State, 877 So.2d 1254, 1271-72
(Miss. 2004). This Court has cautioned, however, that previous opinions holding reasons to be race-neutral should not be construed to hold those reasons to be automatically race-neutral in any other case. Lockett v. State,517 So.2d 1346, 1353 (Miss. 1987). Thus, this Court will examine each reason which Pruitt argued was pretext.
 ¶ 18. Concerning the issue of whether a juror living in a high-crime area is pretext, precedent holding this as a race-neutral reason previously has been sufficient to affirm the trial court's decision. Baldwin v. State,732 So.2d 236, 243-44 (Miss. 1999). Further indicating there was no intentional discrimination involved in striking this juror, the additional reasons cited — short-term employment and single motherhood, which were unchallenged by Pruitt — also have previously been held to be race-neutral.Magee, 720 So.2d at 188-89.
 ¶ 19. With regard to Pruitt's argument that the record lacked support that the jurors were related to persons prosecuted by the county, this Court has held that "[a]lthough lack of record support is one indication of pretext . . . the basis for the prosecutor's strike need not be in the record."Manning v. State, 765 So.2d 516, 519 (Miss. 2000) (citing Thorson v. State, 721 So.2d 590, 597-98
(Miss. 1998) (prosecutor acting in good faith may offer a race-neutral reason supplied to him by a third party)). This Court has stated:
 [w]e decline to set any limits on the prosecutor's use of any legitimate informational source heretofore or hereafter available as to jurors. Furthermore, the prosecutor does not have to question a juror in open court about such information before using it as a racially neutral ground to make a peremptory strike, as long as the source of the information and the practice itself are not racially discriminatory.
Snow v. State, 800 So.2d 472, 482 (Miss. 2001) (quoting Brown v. State, 749 So.2d 82, 87 (Miss. 1999) (citing Lockett, 517 So.2d at 1352)). See alsoFlowers v. State, 947 So.2d 910, 925 (Miss. 2007). Accordingly, Pruitt's arguments concerning lack of record and failure to voir dire are insufficient to overcome the deference we give to the trial court with regard to its ruling on aBatson challenge.[3] *Page 946 
 ¶ 20. Relying on Hatten v. State, 628 So.2d 294
(Miss. 1993), the dissent argues that the trial court erred because it did not make specific findings in connection with its ruling on the State's reasons. Batson, the case which originally defined the three-step analysis required in a jury-discrimination challenge, did not articulate a particular means of accomplishing the third step. Batson,476 U.S. at 98, 106 S.Ct. 1712 ("The trial court then will have the duty to determine if the defendant has established purposeful discrimination."). The Supreme Court has not since required trial courts to employ any specific process in carrying out steps two and three of the Batson procedure. On the contrary, in addressing a Batson claim, the Supreme Court has stated, "[w]e adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it." Miller-El v. Cockrell,537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A number of courts have used this statement to reject the argument that a trial court must make specific findings of fact regarding the proffered race-neutral reasons. See e.g., State v.Frazier, 115 Ohio St.3d 139, 152, 873 N.E.2d 1263 (2007) (while more thorough findings would have been helpful, "the trial court is not compelled to make detailed factual findings to comply with Batson"); Lamon v. Boatwright,467 F.3d 1097, 1101 (7th Cir. 2006) (where a trial court failed to make findings on each proffered reason, it is sufficient if the appellate court can infer from the record that the trial judge engaged in the step-three inquiry); Messiah v.Duncan, 435 F.3d 186, 198 (2d Cir. 2006) ("As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express hisBatson ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a Batson challenge.")
 ¶ 21. Moreover, in Burnett v. Fulton, this Court held that "[t]he trial judge was not required to state on-the-record `specific explanations' for accepting race-neutral reasons for striking a juror." Burnett,854 So.2d 1010, 1016 (Miss. 2003). In Burnett, "[a]lthough the [trial] judge allowed the reasons to stand, he did not make `specific explanation' on the record."Burnett, 854 So.2d at 1013. This Court citedHatten for the proposition that "trial court judgesshould make on-the-record factual determinations of race-neutral reasons in cases involving Batson
challenges." Burnett, 854 So.2d at 1014 (citingHatten, 628 So.2d at 298) (emphasis added). However, this Court explained that "[t]he trial judge need only have submitted to the court [sic] a basis in fact so as to permit a reasonable judgment to be made that the reason is not contrived." Burnett, 854 So.2d at 1016 (citingHatten, 628 So.2d at 299). This Court declared:
 [w]here a trial judge fails to elucidate such a specific explanation for each race-neutral reason given, we will not remand the case for that Batson-related purpose alone. This Court is fully capable of balancing the Batson factors in cases such as this one. Continued remand of such cases only wastes the trial court's *Page 947 
limited resources and acts to further delay justice.
Burnett, 854 So.2d at 1016. Accordingly, in the case at bar we find the trial court's ruling sufficient for review.
 ¶ 22. As this Court has recognized the reasons given for striking each of these venire members as a race-neutral explanation, we find no clear error in the trial court's ruling. See Baldwin, 732 So.2d at 243-44. Considering that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike," Purkett v. Elem, 514 U.S. 765, 768,115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), we have examined the evidence put forth by Pruitt at trial and find that Pruitt failed to meet his burden.[4] The trial court's denial of Pruitt's Batson challenge is affirmed.
 ¶ 23. As an addendum to this opinion, we must take exception to the trial court's actions in directing the lawyers to select the jury outside its presence. The fact that the peremptory strikes portion of the jury selection was not held on the record posed significant problems in consideration of this appeal. According to the rules for circuit court, "Constitutional challenges to the use of peremptory challenges shall be made at the time each panel is tendered." URCCC 4.05B. The application of this rule requires, at the time the peremptory strikes are made, the presence of the judge to rule on any challenge, and the court reporter to record the arguments and rulings.
 CONCLUSION ¶ 24. Pruitt failed to show under Batson that the State intentionally discriminated in exercising its peremptory strikes. Therefore, we affirm his conviction.
 ¶ 25. CONVICTION OF ARMED ROBBERY AND SENTENCE OFTHIRTY-FIVE (35) YEARS, WITH FIVE (5) YEARS SUSPENDED, WITHCONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS, AFFIRMED. THE APPELLANT SHALL BE PLACED UNDERPOST-RELEASE SUPERVISION UPON RELEASE FROM THE TERM OFINCARCERATION FOR A PERIOD OF FIVE (5) YEARS.
SMITH, C.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.
[1] After briefing concluded, Pruitt filed a brief on his own behalf. We will not address the issues raised in Pruitt's brief because they are procedurally barred. M.R.A.P. 28(a)(3);Sumrell v. State, 972 So.2d 572, 574-75 (Miss. 2008).
[2] Foster found that the trial court had implicitly ruled that the reasons given by the State were sufficiently race-neutral. Foster, 639 So.2d at 1280.
[3] The dissent cites Snyder v. Louisiana, ___ U.S. ___, 128 S.Ct. 1203, 1209, 170 L.Ed.2d 175 (2008), as clearly supporting the proposition that an appellate court should not defer to a trial court which did not make specific findings of fact on the record for each race-neutral reason proffered. This is a generalization and overstatement simply not found inSnyder. In Snyder, "the Supreme Court rejected the State's argument that the prosecutor's peremptory challenge was validly based on a prospective juror's nervousness for the reason that the record did not reflect whether the trial court, in allowing the challenge, had noted, recalled or made a determination as to the juror's demeanor."Haynes v. Quarterman, 526 F.3d 189, 199 (5th Cir. 2008). The Supreme Court did not defer to the trial court because of the nature of the reason. "[D]eterminations of credibility and demeanor lie `peculiarly within a trial judge's province.'" Snyder, 128 S.Ct. at 1208 (citingHernandez, 500 U.S. at 365, 111 S.Ct. 1859). Without a trial court determination on the record, the Supreme Court could not presume that the trial judge credited the prosecutor's assertion that the juror had exhibited the demeanor suggested. Snyder, 128 S.Ct. at 1209.
The dissent quotes the Supreme Court's note that "deference isespecially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike." Id. (emphasis added). From this narrow statement, there is no inference that the Supreme Court was prohibiting or even discouraging deference in all
cases in which the trial court fails to make specific findings for each proffered reason. In fact, the Supreme Court reiterates its position that "in the absence of exceptional circumstances, we would defer to [the trial court]."Id. at 1208 (citing Hernandez,500 U.S. at 365, 111 S.Ct. 1859). The dissent misstates the Supreme Court's analysis in Snyder.
[4] The dissent justifies reversal partially by comparing the length of employment of juror number fourteen who was stricken with that of white venire persons. This comparison was not presented by Pruitt during trial. This Court has specifically declined to consider arguments of pretext upon which the trial court has had no opportunity to rule. Flowers v.State, 947 So.2d 910, 921-22 (Miss. 2007) (citingEvans v. State, 725 So.2d 613, 632 (Miss. 1997)). To do otherwise would be in violation of our long-standing rule that issues not presented to trial court are procedurally barred, and any error is waived. Flowers,947 So.2d at 922.