KING, JUSTICE, DISSENTING:
 

 ¶ 65. The Court today strikes a great blow to the progress this State has made in eliminating discrimination from the jury-selection process. During the jury-selection process for Frankie Terrell Jones's trial, the State used four of its first five peremptory strikes to eliminate three potential African American jurors and one Middle-Eastern juror. The defense raised a
 
 Batson
 
 challenge.
 
 [5]
 
 When asked for its race-neutral reasons for the first two peremptory strikes, the State responded that law-enforcement officers had informed the prosecution that people with the same last name previously had been prosecuted in that county. Counsel for the defense rebutted the State's explanations, arguing that the State had not alleged that these previously prosecuted persons were of any relation to the two potential jurors and had not attempted to voir dire the potential jurors. Yet, without requiring verification or inquiring if the potential jurors were related to those people, the trial court, and now this Court, found no issue with the vague and unsupported explanations offered by the State.
 

 ¶ 66. After the defense raised a
 
 Batson
 
 challenge, the trial court initially found
 that a prima facie case of discrimination had been shown. The second step in
 
 Batson
 
 requires the State to offer race-neutral justifications for the strikes. "[O]nce the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes...."
 
 Pruitt v. State
 
 ,
 
 986 So.2d 940
 
 , 942-43 (Miss. 2008). When asked for a race-neutral reason for its strikes, the State replied [in reference to Jurors 5 and 7]:
 

 According to law enforcement, we have prosecuted many McKinney's [sic], known to be bootleggers; and we asked the question. They didn't respond. Juror number 7, Glaspie, is a common name. We've prosecuted many of those family members. We asked the question. He did not respond.
 

 This Court previously has held that the actual criminal history of a potential juror's family member may be considered a race-neutral reason for exercising a peremptory strike.
 
 Pitchford v. State
 
 ,
 
 45 So.3d 216
 
 , 227 (Miss. 2010).
 
 [6]
 
 However, the court's inquiry does not end there. The court has an obligation to move to the third step, which is to determine whether what is at least facially a race-neutral reason, is not being embraced as a pretext to mask active racial discrimination.
 

 ¶ 67. "After affording the defendant an opportunity to rebut, the trial court should proceed to the third step of
 
 Batson
 
 and determine whether or not the opponent of the strike has proven intentional discrimination."
 
 Thorson v. State
 
 ,
 
 721 So.2d 590
 
 , 593 (Miss. 1998) (citing
 
 Batson
 
 ,
 
 476 U.S. at 98
 
 ,
 
 106 S.Ct. 1712
 
 ). Black's Law Dictionary defines "pretext" as "a false or weak reason or motive advanced to hide the actual or strong reason or motive."
 
 Pretext
 
 , Black's Law Dictionary (10th ed. 2014). Counsel for Jones rebutted the State's proffered reasons for the challenged strikes, stating:
 

 Your Honor, it could be just like the Jones[es] and Jones[es]. I don't know if these folks were related. They were asked the question, and they didn't respond. If he wanted to ask them directly, he could have called on that juror number and specifically asked them during voir dire, and he failed to do that. There was no response on anything from any of these; and three out of four blacks were challenged, Your Honor.
 

 Regardless, the trial court then accepted the State's proffered reasons as race-neutral without further inquiry or verification.
 

 ¶ 68. This Court previously has held the lack of record support for a proffered reason to be indicative of pretext.
 
 Flowers v. State
 
 ,
 
 947 So.2d 910
 
 , 924-25 (Miss. 2007). The failure to voir dire also is indicative of pretext.
 

 Id.
 

 ;
 
 see also
 

 Mack v. State
 
 ,
 
 650 So.2d 1289
 
 , 1299 (Miss. 1994) ("The trial court correctly rejected the challenge to Terrell based upon a suspected relationship, observing that the prosecutor could have raised the issue on
 
 voir dire.
 
 "). In
 
 Flowers
 
 , the State struck juror Vickie Curry, listing four reasons for the peremptory strike: Curry worked with the defendant's sister; she had problems with the death penalty; one of the State's investigators personally had run-ins with Curry's husband; and her husband had been convicted of burglary of a nursing home.
 
 Flowers
 
 ,
 
 947 So.2d at 923
 
 . This Court found probative
 that the only support for the State's contention that Curry's husband had been convicted of a crime was the State's bare assertion that its investigator had stated this.
 

 Id.
 

 at 925
 
 . Because the contention lacked record support and because the State failed to voir dire the juror, this Court found that strike was indicative of pretext.
 

 Id.
 

 at 925
 
 .
 

 ¶ 69. This Court went on to state that the bald assertion did not, in and of itself, necessitate a finding that a
 
 Batson
 
 violation had occurred.
 

 Id.
 

 However, this Court stated, "because two of the State's four grounds for striking Curry have no basis in the record, and Curry was treated disparately from a similarly situated white juror on the third ground, we are convinced that the trial court erred in denying Flowers's
 
 Batson
 
 challenge as to the striking of Curry, as this ruling is against the overwhelming weight of the evidence in the record."
 

 Id.
 

 at 926
 
 .
 

 ¶ 70. Conversely, this Court has upheld the trial court's acceptance of a peremptory strike after the trial court required verification of the prosecution's assertion that a potential juror's family members had been prosecuted.
 
 Snow v. State
 
 ,
 
 800 So.2d 472
 
 , 479 (Miss. 2001),
 
 declined to follow by
 

 Flowers v. State
 
 ,
 
 947 So.2d 910
 
 (Miss. 2007). In
 
 Snow
 
 , the prosecutor offered as a race-neutral reason for striking a potential juror that he had information that a number of the potential juror's family members had been arrested and convicted and that the juror had complaints from writing bad checks.
 

 Id.
 

 The trial court then required two members of the District Attorney's Office to verify the prosecutor's statement.
 
 Id.
 
 at 481. This Court stated, "[t]he trial court thoroughly investigated the race-neutral reason in order to make a determination of whether or not the reason was pretextual and concluded that this reason was clearly supported from the testimony of the investigator."
 
 Id.
 
 at 483.
 

 ¶ 71. Here, unlike in
 
 Flowers
 
 and
 
 Snow
 
 , the State offered no additional explanations for striking Jurors 5 and 7. The State's sole reason was that people with the same last name had been prosecuted previously. The State failed to specify whether or not those people who had been prosecuted were related to either juror. In addition, the State provided far less information for its peremptory strikes than it did in
 
 Flowers
 
 . In
 
 Flowers
 
 , the State provided a specific example of why it had used a peremptory strike against the potential juror-that the juror's
 
 husband
 
 had been convicted criminally and had problems with the law. If the State had been aware of a familial relationship in this case, it offered no indication of who in the McKinney or Glaspie family had been prosecuted or at what point in time the family member had been prosecuted. If McKinney's or Glaspie's distant cousin had been prosecuted twenty years ago, it likely would have no effect on her fitness as a juror today. "[T]he prosecutor must give a 'clear and
 
 reasonably specific
 
 ' explanation of his 'legitimate reasons' for exercising the challenges."
 
 Batson
 
 ,
 
 476 U.S. at
 
 98 n.20,
 
 106 S.Ct. 1712
 
 (emphasis added). Here, the prosecution merely painted with a broad brush, stating that individuals with the same surname had been prosecuted. Its reasons were neither clear nor reasonably specific.
 

 ¶ 72. The majority takes issue with Jones's arguments that the State had not questioned the potential jurors about family relationships and that no proof existed that the potential jurors were related to the individuals referenced by the State. To justify those strikes, the majority writes:
 

 First the State asked the venire whether any of them had a close, personal friend or family member that had been
 charged with a crime. When asked to provide race-neutral reasons for its peremptory strikes, the State explained that part of the reason for exercising the strikes for Jurors 5 and 7 was because they had not answered the question. Second, there was no undisputed evidence that the jurors were not related.
 

 During voir dire, the State questioned the collective jury pool, asking:
 

 The next question is about whether any of you have been charged with a crime or close, personal friends, or family members that have been charged with a crime; and the judge kind of went over this a little bit. We're not talking about misdemeanor stuff, DUI; and I always like to say that we all have members of our families, you know, the black sheep of the family. Even in my own family people have been charged with crimes. They are all on my wife's side.
 
 But anybody have any close, personal friends that have been charged with crimes?
 

 (Emphasis added.) "Disparate treatment of similarly situated jurors is an indicator of pretext for racial discrimination."
 
 Flowers
 
 ,
 
 947 So.2d at 921
 
 . Out of the collective jury pool, only five potential jurors responded in the affirmative: Jurors 13, 17, 48, 52, and 63. Out of those five, the State tendered the jury pool before it reached jurors 52 and 63. Therefore, the State had the opportunity to strike three potential jurors that had responded affirmatively that they had family members who had been charged with a crime. The State tendered two of those three jurors. State accepted Juror 17, Sherry Williams, who had a cousin who had been prosecuted in the same county. The State also accepted Juror 48, Ernie Doss, who had a family member convicted of a felony in the same area. Yet, although Jurors 5 and 7 had not indicated that they were related to or had any close personal friends that had been charged with a serious crime, instead of giving credence to the potential jurors or questioning those jurors further, the State, the trial court, and now the majority presume that only the two African American jurors were untruthful in their silence.
 

 ¶ 73. Moreover, I note that, although the prosecution made lengthy prefatory remarks in its question to the jury pool, its specific question to the jury regarding relationships with individuals charged with crimes was: "But anybody have any close, personal friends that have been charged with crimes?" Hence, the prosecution wholly failed to ask the potential jurors if any family members had been charged with crimes. The majority's statement that "the State asked the venire whether any of them had a close, personal friend
 
 or family member
 
 who had been charged with a crime" is inaccurate. (Maj. Op. ¶ 35).
 

 ¶ 74. The majority additionally states that "there was no undisputed evidence that the jurors were not related." (Maj. Op. ¶ 35). Yet, the opposite of that statement is far more true. No evidence exists in the record that those jurors were of any relation. Requiring the opponent of a peremptory strike to present undisputed evidence to rebut every explanation that the proponent of the strike offered would force a party challenging a peremptory strike somehow to: 1) anticipate the jurors on which the proponent of the strike may intend to use peremptory strikes; 2) imagine each possible explanation the proponent may use to defend that strike; and 3) be prepared to disprove any and every reason provided by the proponent. In the alternative, the challenging party would have to be allowed a recess after making a
 
 Batson
 
 challenge, so it could be provided an opportunity to develop information disproving the proffered explanation. The defense counsel in this case sufficiently
 responded to the State's proffered explanation when he pointed to the glaring absences in the State's assertions. The majority finds that the trial court may accept vague, unsupported reasons for striking jurors, and allows the State idly to sit by, basking in the insurmountable security granted to it by this Court.
 

 ¶ 75. The comment to Mississippi Rule of Professional Conduct 3.8 states that the prosecutor "has the responsibility of a minister of justice and not simply that of an advocate." M.R.P.C. 3.8 cmt. Nothing in the record rebuts the conclusion that prosecutor's proffered explanations were based on anything other than the fact that these two potential jurors had the same last name as people who had been prosecuted before. In essence, the prosecution's explanations resound in pretext. If the prosecution had been concerned about those two jurors possibly being related to "bootleggers" or to individuals with the same last name who had been prosecuted, the prosecutor should have asked that question in voir dire. The prosecution failed to do this. It is insufficient simply to state that individuals with the same last name have been prosecuted without more.
 
 [7]
 
 The assertion that a juror was struck because people of the same last name had been prosecuted previously, without more, is suggestive of pretext.
 
 [8]
 

 ¶ 76. The majority cites
 
 Chamberlin v. State
 
 , in which the State struck seven African American potential jurors.
 
 Chamberlin v. State
 
 ,
 
 989 So.2d 320
 
 , 339 (Miss. 2008). The majority states that "the Court wrote that because the objector failed to offer any proof that the State's reasons were pretextual, the State's reasons for the challenges were the only considerations before the trial court." In
 
 Chamberlin
 
 ,
 however, the defense offered no rebuttal to the State's reasons for the first four jurors challenged.
 

 Id.
 

 And on the remaining three jurors, the defense failed to rebut the specific reasons proffered by the State.
 

 Id.
 

 ¶ 77. The majority further writes that, "in the absence of rebuttal by the challenging party, the trial court is limited to the reasons proffered by the party exercising the peremptory strike." (Maj. Op. ¶ 40). The majority's statements are misleading. Unlike in
 
 Chamberlin
 
 , here, counsel for Jones did rebut the State's proffered explanations by pointing out correctly that the prosecutor had failed to state that an actual relationship existed and had not questioned the jurors during voir dire concerning the potential relationship. Thus, the majority errs in its conclusion that defense counsel had failed to rebut the State's proffered explanations. At that point, the trial court abused its discretion in failing to require the State to support its proposed explanation with some form of verification that an actual relationship existed. Jurors must not be disqualified based solely on the State's suspicions that the jurors
 
 could
 
 have been related to people that had been convicted.
 

 ¶ 78. A defendant has the right to be tried by a jury "whose members are selected by nondiscriminatory criteria."
 
 Powers v. Ohio
 
 ,
 
 499 U.S. 400
 
 , 405,
 
 111 S.Ct. 1364
 
 , 1367,
 
 113 L.Ed.2d 411
 
 (1991). It is true that the trial court may evaluate a prosecutor's credibility, but it must not allow a prosecutor to offer unsupported explanations for striking a potential juror. And this Court must ensure that the trial court conducts a
 
 meaningful
 
 evaluation of the question of pretext, as opposed to the perfunctory one that occurred in this case. This practice protects both the parties at trial as well as the citizens who potentially may serve on a jury.
 

 ¶ 79. As recently as last year, the United States Supreme Court in
 
 Peña-Rodriguez v. Colorado
 
 , expressed the importance of eliminating race-based discrimination from the jury system, stating:
 

 The Nation must continue to make strides to overcome race-based discrimination. The progress that has already been made underlies the Court's insistence that blatant racial prejudice is antithetical to the functioning of the jury system and must be confronted.... It is the mark of a maturing legal system that it seeks to understand and to implement the lessons of history. The Court now seeks to strengthen the broader principle that society can and must move forward by achieving the thoughtful, rational dialogue at the foundation of both the jury system and the free society that sustains our Constitution.
 

 Peña-Rodriguez v. Colorado
 
 , --- U.S. ----,
 
 137 S.Ct. 855
 
 , 871,
 
 197 L.Ed.2d 107
 
 (2017). Should the State have concerns regarding the closeness of individuals previously prosecuted in the county to a potential juror, it is imperative that the trial court require the State to develop meaningful information through individual voir dire or verification through others. The State's assumption that all persons bearing the same last name are related, but especially all African Americans bearing the same last name, is unfounded.
 
 [9]
 
 That the
 trial court blindly would accept such an assertion, without question or reservation, is an abuse of discretion.
 

 ¶ 80. The protections of
 
 Batson
 
 do not apply only to the parties in a case.
 
 Batson
 
 's protection from racial discrimination in the jury-selection process is twofold. First, that protection from racial discrimination in the jury-selection process extends to the litigants. A litigant has the right to participate and place information before the trial court. Second, the protection from racial discrimination in the jury-selection process extends also to potential jurors.
 
 See
 

 Campbell v. Louisiana
 
 ,
 
 523 U.S. 392
 
 , 397-98,
 
 118 S.Ct. 1419
 
 , 1423,
 
 140 L.Ed.2d 551
 
 (1998) (holding that a defendant has standing to bring an equal-protection challenge to racial discrimination against persons excluded from jury service because, "given the economic burdens of litigation and the small financial reward available, 'a juror dismissed because of race probably will leave the courtroom possessing little incentive to set in motion the arduous process needed to vindicate his own rights.' "). Those potential jurors are not given an affirmative opportunity to question the jury-selection process. Nor can we assume that the interest of the potential jurors in being free from racial discrimination is so aligned with the interests of the litigants as to be protected by the litigants. The burden of protecting potential jurors from racial discrimination rests squarely with the court. It is therefore the responsibility of the trial court to give meaningful review, rather than mere lip service, to the question of pretext in jury selection. Under the facts of this case, I would find that the trial court abused its discretion by giving mere lip service, rather than meaningful review, to the issue of pretext. I would reverse and remand this case for a new trial. Therefore, I dissent.
 

 WALLER, C.J., KITCHENS, P.J., AND ISHEE, J., JOIN THIS OPINION.
 

 Batson v. Kentucky
 
 ,
 
 476 U.S. 79
 
 ,
 
 106 S.Ct. 1712
 
 ,
 
 90 L.Ed.2d 69
 
 (1986).
 

 Defense counsel states that, although he believes that the State's strike of Juror 8 was racially motivated, he "concedes that evidence in the record is sufficient to support the trial court's ruling with regard to this juror." Counsel for defense also believes that the State's use of a peremptory strike against Juror 12, Alarmry, was racially motivated but conceded that the ruling on that objection was not pursued.
 

 See
 

 Looney v. Davis
 
 ,
 
 721 So.2d 152
 
 , 166 (Ala. 1998) ("Thus, we hold that the trial court erred in finding that the speculation of plaintiff's counsel that K. H. knew Dr. Looney or his family was sufficient to rebut the presumption of discrimination.");
 
 Ridley v. State
 
 ,
 
 235 Ga.App. 591
 
 ,
 
 510 S.E.2d 113
 
 , 117 (1998) ("In allowing the State to strike a juror based on nothing more than the juror's last name, without any inquiry into whether the juror is in fact related to a criminal defendant, the Supreme Court opens the door to a myriad of prosecutorial misconduct and essentially insulates such conduct from any meaningful review by this Court. It is a rare juror, even in a small town, who does not share a last name with some current or prior defendant, but who may not be even remotely related in any other way.");
 
 Ex parte Bird
 
 ,
 
 594 So.2d 676
 
 , 683 (Ala. 1991) ("Here, a simple question directed to the veniremember could have dispelled any doubt about a possible relationship. However, neither the State nor the court engaged in any voir dire on this subject. In the absence of any examination, the trial judge had nothing on which to make the required 'sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as he [knew] them.' ");
 
 State v. Marrs
 
 ,
 
 180 W. Va. 693
 
 , 695,
 
 379 S.E.2d 497
 
 , 499 (1989) ("However, if this were the prosecuting attorney's true reason for striking Mr. Kelsor, she could have asked him whether he or a relative of his had a criminal warrant pending against him, or she could have asked the entire jury panel if any of them was related to someone with criminal charges pending against him. If we are to give real effect to the U.S. Supreme Court's decision in
 
 Batson
 
 , we must require the State in cases such as this to give a non-racial,
 
 credible
 
 justification for striking the only member of defendant's race from the panel.") (emphasis in original).
 

 In oral argument, counsel for the State admitted that the record contained no indication that the prosecutor had provided the proffered explanations based on his own personal knowledge. The State also admitted that the record contained no indication that everybody with the same last name in Calhoun County, Mississippi, was related, and contained no indication that African Americans in Calhoun County with the same last name were related. Additionally, the record failed to indicate that every African American in Calhoun County with the last names McKinney or Glaspie was a bootlegger.
 

 The infirmity in the State's reasoning, and the trial court's blind acceptance of that reasoning, can be shown by this illustration. A computer search of the inmates in the custody of the Mississippi Department of Corrections reveals seventy inmates who share the same last name as the author of this dissent. This number includes several inmates who were convicted in that author's home county. The fact that these seventy inmates, some of whom were convicted in the home county of the dissent's author, share the same last name as the author of the dissent, is not indicative of any relationship between the dissent's author and these seventy persons. Nor does it in any way suggest or indicate that the author of the dissent knows, or knows of, any of these seventy persons.