# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00515-COA

**HUBERT ANDERSON A/K/A HUBERT PATRICK ANDERSON**     **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**     **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/21/2019 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY JR. |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/27/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     After a jury trial in the Jackson County Circuit Court, Hubert Patrick Anderson was convicted of capital murder and sentenced to serve life in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender without eligibility for parole or probation.  The trial court denied Anderson's motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial.

¶2.     Anderson appeals, claiming the trial court erred by (1) allowing the prosecution to exercise peremptory strikes on two of three African American venire members; (2) denying

the defense's motion for a mistrial following an emotional outburst by the victim's family; and (3) admitting into evidence messages from an accomplice's Facebook account and a summary "timeline" created by the State. Finding no error, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

¶3.     Upon receiving his tax refund of approximately $5,000, the victim in this case, Donta Banks, purchased a used Chrysler Pacifica on March 21, 2016. Later that same evening, while visiting casinos in the Mississippi Gulf Coast area, Banks encountered Anderson, an acquaintance. Banks, Anderson, and Anderson's date, Rita Johnston, spent the entire night driving around in Banks's vehicle and gambling.

¶4.     The following morning, a police officer found Banks dead from a gunshot wound to the head in a remote area of Jackson County. Banks's wallet and vehicle were missing. The police found the wrecked Chrysler Pacifica later that afternoon with Johnston still in the front passenger seat. Anderson was apprehended nearby. Items purchased by Anderson and Johnston during a shopping spree that morning, as well as Banks's phone and casino player's card, were found inside the vehicle.

¶5.     Anderson and Johnston were co-indicted for capital murder. Johnston entered a guilty plea to accessory after the fact and attempted burglary. A "memorandum of understanding" provided that upon Johnston's cooperation with the State and truthful testimony at Anderson's trial, the State would recommend twenty years to serve for the accessory

---

[1] The State filed a cross-appeal concerning the trial court's decision regarding the admissibility of evidence of flight in the above matter. The State later moved to dismiss the cross-appeal, which this Court granted on February 11, 2020.

2

conviction and twenty-five years to serve for the attempted burglary conviction, with the sentences to run consecutively in the custody of the MDOC.

¶6. After a three-day jury trial on February 11-14, 2019, Anderson was convicted of capital murder.[2] The trial court sentenced Anderson to serve life in the custody of the MDOC as a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015) without eligibility for parole or probation. Anderson filed a "Motion for a New Trial and/or a JNOV," which included errors alleged on appeal. The trial court denied the motion.

## DISCUSSION

I.      **Whether the trial court committed reversible error by performing an incomplete *Batson* analysis.**

¶7. During voir dire, defense counsel noted that the State had used peremptory strikes on two of three African American venire members tendered and asked the court to conduct a *Batson* analysis.[3] Although the trial judge noted that "two out of three . . . [was] hardly a pattern," the State volunteered to "mak[e] a record."[4] Referring to the two potential jurors

---

[2] Because Anderson has not challenged the sufficiency and weight of the evidence on appeal, we find it unnecessary to provide a detailed discussion of the events surrounding Banks's murder or the trial testimony. Pertinent testimony will be addressed in the individual issues below.

[3] In *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), the United States Supreme Court held that the Equal Protection Clause prohibits the prosecution from exercising peremptory strikes during jury selection based on a juror's race.

[4] In response to the specially concurring opinion by Judge McCarty, we would merely point out that the supreme court has further recognized that "[a]lthough a pattern is not an essential element to establish a prima facie showing of purposeful discrimination, it is an element which can be used." *H.A.S. Elec. Contractors Inc. v. Hemphill Const. Co.*, 232 So.

3

as the "amen section," the State explained those venire members were struck because they "were just really loving" defense counsel, making "audible responses every time he asked a question," and the State's peremptory strikes had nothing to do with their race. When asked by the trial judge to respond, defense counsel stated:

> There is no rebuttal that they were engaged in voir dire[,] I would just point out that if they don't answer then the excuse is they didn't answer. When they do answer, the excuse is they did answer. So I don't know that that can be rebutted other than it's used both ways. It's not really a reason at all.

The State replied, "[T]here's a difference between being engaged in the process and being clearly for one side or the other." Concluding that the State had provided "race-neutral reasons" and that there was "no evidence that the use of peremptory challenges in that nature were pretextual," the trial court denied the defense's *Batson* challenge.

¶8. Affording "great deference" to a trial court's ruling on a *Batson* challenge, we "will not overturn the trial court's ruling unless it is clearly erroneous or against the overwhelming weight of the evidence." *Jones v. State*, 252 So. 3d 574, 580 (¶25) (Miss. 2018) (quoting *Pruitt v. State*, 986 So. 2d 940, 942 (¶8) (Miss. 2008)). A *Batson* challenge involves a three-step analysis:

> (1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose;

> (2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial or sexual exclusion by offering

3d 117, 134 (¶11) (Miss. 2016). Here, defense counsel's only argument was that the prosecution's striking of two of "three African American jurors that were tendered" was a pattern establishing a prima facie case "under *Batson*." The defense asserted no other basis for a prima facie case, such as "the prosecutor's questions and statements during voir dire examination and in exercising his challenges." *See Batson*, 476 U.S. at 97.

permissible, race-neutral justifications for the strikes; and

(3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial or sexual discrimination.

*Lewis v. State*, 239 So. 3d 1097, 1099 (¶7) (Miss. Ct. App. 2018) (citing *Pruitt*, 986 So. 2d at 942-43 (¶8)). "Once the striking party offers a valid race-neutral reason, the trial judge must allow the strike unless the other party demonstrates that the valid race-neutral reason was a pretext for discrimination." *Eubanks v. State*, 291 So. 3d 309, 319 (¶31) (Miss. 2020) (quoting *H.A.S. Elec. Contractors Inc. v. Hemphill Const. Co.*, 232 So. 3d 117, 124 (¶19) (Miss. 2016)). Thus, "unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race neutral." *Id*. (quoting *H.A.S. Elec. Contractors*, 232 So. 3d at 133 (¶9)).

¶9.    Anderson contends that "the trial court made no finding of a prima facie case" and failed to engage "in an analysis involving the third-step of *Batson*: pretext." Thus, he claims that the "court's lack of an analysis of the third prong of *Batson* was inadequate, incomplete, and constitutionally deficient."

¶10.    Anderson cites this Court's holding in *Watts v. State*, 281 So. 3d 873, 879 (¶17) (Miss. Ct. App. 2019), in which we reversed and remanded for a new trial, finding that the trial court erred in failing to proceed to the third-step of the *Batson* analysis after the defendant had provided a race-neutral reason for striking a venire member and in denying the defendant's peremptory strike. In *Watts*, the State raised a *Batson* challenge on the basis of race because the defendant had used peremptory strikes on three white venire members. *Id*.

5

at 877 (¶9). Finding a prima facie case of racial discrimination had been established, the court then determined that the race-neutral reason offered by the defendant as to one of the jurors—that he was a banker and knew "a lot of people in the community"—was not "a sufficient race-neutral reason" and added him to the jury. *Id*. at 877-78 (¶¶10-11). Finding that Watts had provided a race-neutral reason, "requiring the trial to proceed to third step of the *Batson* analysis," we concluded the court erred in denying his peremptory strike. *Id*. at 879 (¶17).

¶11.    *Watts* is clearly distinguishable in that the trial court in that case determined that the defendant had not provided a race-neutral reason for striking the venire member. We recognized in *Watts* that valid race-neutral reasons may be "body language, demeanor, [and] distrust of a juror by the party exercising the strike[.]" *Id*. at 878 (¶13). In this case, the State explained that the demeanor of the two venire members toward defense counsel gave the State reason to question their impartiality in this case, and we agree with the trial court that this was a valid race-neutral reason. Thus, the burden shifted to the defense to demonstrate that this race-neutral reason "was a pretext for discrimination." *See Eubanks*, 291 So. 3d at 319 (¶31).

¶12.    In a similar case, *Pettus v. State*, 295 So. 3d 993, 998 (¶17) (Miss. Ct. App. 2020), we recently addressed a defendant's argument that the trial court erred in not "undertak[ing] its duty to perform *Batson*'s third step and determine whether the facially valid reasons offered were pretext for purposeful discrimination." After the State used peremptory strikes on five members of the venire, the defense raised a *Batson* challenge, because all five members were

6

African American, and all but one were female. *Id*. at 997 (¶10). The trial court in *Pettus* expressed uncertainty that there was a "presumption of bias" but advised the State that it might be "prudent" to put its reasons for the strikes on the record. *Id*. The State proffered its race-neutral reasons (e.g., lack of attention, relatives who had criminal histories, etc.), and the defense declined the trial court's opportunity to offer a rebuttal. *Id*. at 997-98 (¶¶11-16). The court "found that the State explained race-neutral reasons appropriately and overruled defense counsel's *Batson* challenges[.]" *Id*. Citing *Pruitt*, 986 So. 2d at 946 (¶20), we concluded that because "the record reflect[ed] that the trial court found the State's race-neutral reasons credible based on the trial court's rejection of Pettus's *Batson* challenge," the court had accomplish[ed] the third step of the *Batson* analysis. *Id*. at 999 (¶21). In *Pruitt*, the supreme court recognized:

> *Batson*, the case which originally defined the three-step analysis required in a jury-discrimination challenge, did not articulate a particular means of accomplishing the third step. *Batson*, 476 U.S. at 98 . . . . The Supreme Court has not since required trial courts to employ any specific process in carrying out steps two and three of the *Batson* procedure. On the contrary, in addressing a *Batson* claim, the Supreme Court has stated, "we adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it." *Miller-El v. Cockrell*, 537 U.S. 322, 347 . . . (2003).

*Pruitt*, 986 So. 2d at 946 (¶20). "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a *Batson* challenge." *Id*. (quoting *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006)).

¶13. Here, both parties were given an opportunity to "make their respective records." As

7

discussed, the State provided a valid race-neutral reason for the peremptory strikes. We further find the defense failed to demonstrate that the race-neutral reasons were a pretext for discrimination. The State correctly notes that the defense offered no rebuttal except a "comment to the effect that the State would challenge if the veniremen had been actively involved or had not been actively involved." Therefore, the trial court had only the reasons offered by the State to review in its *Batson* ruling. *See H.A.S. Elec. Contractors*, 232 So. 3d at 125 (¶24) ("[W]hen the objecting party offers no rebuttal, the court is forced to examine only the reasons given by the striking party."). Because we find the trial court's determination that there was "no evidence that the use of peremptory challenges in that nature were pretextual" was not clearly erroneous or against the overwhelming weight of the evidence, we affirm the court's ruling.

### II.    Whether the trial court erred in the admission of evidence.

¶14.    Anderson asserts two errors with regard to the trial court's admission of evidence. First, he claims that Johnston's Facebook messages that were introduced into evidence were not properly authenticated. Second, he contends that the court erred in admitting a summary timeline of events, which had been generated by law enforcement.

¶15.    Our appellate courts review the admissibility of evidence for abuse of discretion. *Jones v. State*, 154 So. 3d 872, 878 (¶18) (Miss. 2014). Thus, affording the trial court "a great deal of discretion as to the relevancy and admissibility of evidence," we will not reverse the ruling unless we find that the trial court has abused this discretion, resulting in prejudice to the accused. *Id*. (citing *Welde v. State*, 3 So. 3d 113, 116 (¶13) (Miss. 2009)).

### A. Johnston's Facebook Messages

¶16. At trial, the State showed Facebook messages to Johnston that she had purportedly sent but did not recall sending. She did, however, acknowledge that the messages were sent from her personal Facebook account. The defense objected to the admission of the messages into evidence, arguing, "Someone may have sent these messages and they may have sent them from her phone, but she never recognized them and said that she didn't have the phone. She had lost her phone and never found it, so she could not have sent these messages." The trial judge sustained the objection and instructed the State to establish "more of a predicate" for the evidence. Upon further examination by the State, Johnston testified that she had sent the messages:

> Q. And are you saying that this is not your message or that you did send that?
>
> A. I'm saying that yeah, I sent that.
>
> Q. You just don't recall when you lost your phone and the time that you were at Treasure Bay?
>
> A. I do not[,] and I have a special lock on my phone that nobody would be able to text on my phone unless I open my phone.
>
> Q. Is there any doubt in your mind that these messages are yours that you sent on March 21 and March 22 of 2016?
>
> A. No.

The defense renewed its objection, which the trial court overruled noting Johnston's testimony that she recognized the messages sent from her phone. Johnston's friend later testified that she had received Johnston's messages that she "needed" her the morning of

9

March 22.

¶17.   Anderson claims the trial court erred in admitting the Facebook messages into evidence.  Specifically, he asserts that the State failed to demonstrate that Johnston had composed and sent the messages, and thus, the evidence was not properly authenticated. Mississippi Rule of Evidence 901 governs the requirements of authentication of evidence, stating that the authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  M.R.E. 901(a).

¶18.   The Mississippi Supreme Court has held that "[e]lectronic evidence may be authenticated by the traditional means, and is adequately covered by the current rules of evidence." *Smith v. State*, 136 So. 3d 424, 432 (¶18) (Miss. 2014).  In *Smith*, the supreme court determined that the trial court abused its discretion in admitting Facebook messages into evidence that were not properly authenticated as being what they purported to be—messages created and sent by the defendant.  *Id*. at 435 (¶26).  In reaching its conclusion, the *Smith* court reasoned, "Because of the special concerns regarding fabrication, 'the fact that an electronic communication on its face purports to originate from a certain person's social networking account is generally insufficient standing alone to authenticate that person as the author of the communications.'"  *Id*. at 433 (¶20) (quoting *Campbell v. State*, 382 S.W.3d 545, 550 (Tex. App. 2012)).  The only testimony to authenticate the messages were from the recipient, who "did not testify as to how she knew that the Facebook account was [the defendant's], nor did she testify as to how she knew that [he] actually authored the messages."  *Id*. at 434 (¶25).  There was also "no testimony regarding the

security of or access to [his] Facebook account." *Id*. at 435 (¶25).

¶19.    Subsequently, in *Greene v. State*, 282 So. 3d 645, 649 (¶29) (Miss. Ct. App. 2019), this Court reiterated the supreme court's holding in *Smith* and found that the trial court erred by allowing into evidence a Facebook video/photo purportedly of the defendant because "the State failed to authenticate the evidence using either traditional means or the modern *Smith* path." In that case, the only testimony to authenticate the evidence was by a detective who had never seen the defendant prior to trial and who admitted that the Facebook account was under another name. *Id*. at 649-50 (¶¶24-25).[5]

¶20.    We find *Smith* and *Greene* factually distinguishable from the present case, as they did not involve a witness who could provide firsthand authentication that the messages in question were sent by the purported author. The supreme court in *Smith* outlined various means to establish "a prima facie case of authentication," such as:

> [T]he purported sender *admits authorship*, the purported sender is seen composing the communication, business records of [a] . . . cell phone company show[ing] that the communication originated from the purported sender's personal computer or cell phone *under circumstances in which it is reasonable to believe that only the purported sender would have access to the computer or cell phone*, the communication contains information that only the purported sender could be expected to know, the purported sender responds to an exchange in such a way as to indicate circumstantially that [s]he was in fact the author of the communication, or other circumstances peculiar to the particular case[.]

*Smith*, 136 So. 3d at 433 (¶21) (emphasis added). Here, the purported author, Johnston,

---

[5] In both *Smith* and *Greene*, the admission of the Facebook evidence was determined to be harmless error because there was overwhelming evidence of the defendant's guilt, *see Smith*, 136 So. 3d at 435-36 (¶28), or the admission of the posts "did not prejudice the defendant" or "contribute to the verdict," *see Greene*, 282 So. 3d at 651 (¶30).

11

verified firsthand that (1) the Facebook messages came from her account, (2) she remembered sending a message to her friend earlier that evening, and (3) her phone needed a unique code to access her phone and Facebook messages. Although she could not specifically recall sending the message in those early morning hours, Johnston testified that she had no doubt that she had sent the messages. Thus, we find the trial court did not err in allowing the Facebook messages to be admitted into evidence.

### B. State's Summary

¶21. At trial, the State moved to enter into evidence a summary timeline of the events surrounding Banks's death. The defense objected that the timeline was not evidence and was cumulative to the testimony. Noting that the summary timeline was verified by witnesses, photos, videos, date time stamps, and receipt time stamps, the State argued that it was admissible under Mississippi Rule of Evidence 1006, which provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Although defense counsel admitted that the timeline contained no "false information," he nevertheless asserted that the summary was "improper" and that Rule 1006 was not applicable "to this situation." The trial court overruled the defense's objection and allowed the timeline into evidence "as a summary, voluminous records, under Rule 1006."

¶22. Anderson contends that the timeline offered into evidence "is not a summary of voluminous writings, records, or photographs" but rather "a compilation of the testimony

presented at trial, offered to bolster the State's case." He also claims the timeline is "inadmissible hearsay, has no probative value whatsoever, and impermissibly comments on the evidence." We agree with the State that Anderson's "inadmissible hearsay" argument is not properly before this Court on appeal, as defense counsel made no objection on this basis below. *See Gulley v. State*, 779 So. 2d 1140, 1150 (¶36) (Miss. Ct. App. 2001) (Because the record failed to show defense objected to summary charts "on the grounds that they contained inadmissible hearsay," this Court was prevented from considering that argument on appeal.).

¶23. In *Gulley*, 779 So. 2d at 1149 (¶32), our Court held that "[s]ummaries of voluminous evidence are admissible under M.R.E. 1006, according to the trial court's discretion." (Quoting *Farris v. State*, 764 So. 2d 411, 433 (¶82) (Miss. 2000)). Thus, we will only reverse the court's evidentiary findings "when there is a demonstrable abuse of the trial court's discretion." *Id*. Two hundred documents were admitted into evidence in the case before us, and as the State notes, the timeline "was clearly intended only to assist the jury in accurately understanding the sequence of events in this case." Moreover, Jury Instruction 10 given by the trial court instructed the jury that the summary timeline was not to be considered as evidence or proof of any facts and was "only as good as the underlying evidence that support[ed] it." We find the trial court's decision to admit the summary timeline into evidence does not constitute reversible error.

### III. Whether the trial court erred in not declaring a mistrial.

¶24. During examination of the police officer who discovered Banks's body, the State introduced photographs from the crime scene into evidence, including photographs of the

13

deceased. This evidence prompted "sobbing" from members of the victim's family; so the trial judge asked those persons to step outside. After the State tendered the witness for cross-examination, defense counsel moved for a mistrial based on the "emotional outburst." The trial court denied the motion, noting:

> There was an outburst and several, I don't know, five or six, perhaps more, had to leave the courtroom. I think we paused for about approximately 20, 25 seconds and then resumed cross-examination without incident, so under the circumstances I don't think it's necessary. Your motion will be denied.

Defense counsel declined the court's offer to instruct the jury to disregard the disruption.

¶25. Anderson's failure to move for a mistrial contemporaneously with when the "emotional outburst" occurred procedurally bars the issue on appeal. *See Brisco v. State*, 142 So. 3d 1107, 1111 (¶15) (Miss. Ct. App. 2014). We further find no merit to his claim. "The decision [whether] to grant or not grant a mistrial lies within the sound discretion of the trial court and is reviewed for abuse of discretion." *Straight v. State*, 205 So. 3d 1089, 1092 (¶10) (Miss. Ct. App. 2016). A trial judge is afforded "considerable discretion in determining if a mistrial is warranted." *Id*. (citing *Harrell v. State*, 947 So. 2d 309, 316 (¶23) (Miss. 2007)).

¶26. To support his argument that a mistrial was warranted, Anderson cites *Fuselier v. State*, 468 So. 2d 45, 52-53 (Miss. 1985), a case in which the supreme court found reversible error because the victim's daughter and witness sat within the rail, near the prosecution's table, and "exhibited emotion" during the trial. The *Fuselier* court concluded that "[h]er presence at counsel table and open display of emotion presented the jury with the image of a prosecution acting on behalf of [witness]" and "constituted an inflammatory and prejudicial element." *Id*. at 53.

14

¶27. We find *Chase v. State*, 645 So. 2d 829 (Miss. 1994), more on point with the factual situation in this case. In *Chase*, the supreme court considered whether a trial court erred in denying a motion for mistrial because the victim's widow began crying during her testimony, causing members of the family in attendance also to become emotional. *Id*. at 848. The trial court called a short recess and overruled the defense's motion for a mistrial, concluding "it was understandable under the circumstances for [her] to be upset and that as far as the display of emotion by family members, the court found that it has no adverse or prejudicial effect on the jury." *Id*. The supreme court found no abuse of discretion in the trial court's refusal to grant a mistrial. *Id*.; *see also Graves v. State*, 45 So. 3d 283, 286 (¶¶8-10) (Miss. Ct. App. 2010) (affirming trial court's denial of the defense's request for a mistrial after a witness was visibly upset during her testimony).

¶28. Likewise, the trial court in this case promptly addressed the "sobbing" by the family members, sending them out of the courtroom to compose themselves. The trial judge was in a better position than this Court to determine whether the display of emotion had any adverse or prejudicial effect on the jury. We find no abuse of discretion in the trial court's decision in this regard.

¶29. Accordingly, we affirm Anderson's conviction and sentence.

¶30. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS AND McDONALD, JJ., CONCUR. McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, WESTBROOKS AND McDONALD, JJ. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**

15

**McCARTY, J., SPECIALLY CONCURRING:**

¶31.     While I agree with the result of this case, I write separately to emphasize the care we should utilize in applying *Batson*.

¶32.     As the majority recounts, the trial court acknowledged from the Bench that it did not see "a pattern" of strikes based on the race of the potential juror.  However, a pattern of strikes is not required for a violation of Constitutional rights.  Our Supreme Court has long been clear that "only *one* instance—*not a consistent pattern*—of purposeful discrimination is enough to prove a discriminatory purpose." *McGee v. State*, 953 So. 2d 211, 216 (¶11) (Miss. 2007) (emphases added).  Citing *McGee*, our highest Court more recently reiterated that it "was error" when a trial court "mistakenly requir[ed] [a party] to prove a *pattern* of discrimination, instead of pretext." *H.A.S. Elec. Contractors Inc. v. Hemphill Const. Co.*, 232 So. 3d 117, 124 (¶20) (Miss. 2016) (emphasis in original).

¶33.     While the trial court's invocation of the mistaken "pattern" requirement does not require reversal, the key importance of *Batson*—"[t]o safeguard against racial discrimination in jury selection," *H.A.S. Elec. Contractors*, 232 So. 3d at 123 (¶14)—means we should guard against any errors in its application.

**GREENLEE, WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**