EVANS, Circuit Judge.
Three years ago, in a 4-3 decision on direct review, the Wisconsin Supreme Court rejected Nancy Lamon’s claim that the state violated the rule announced in Batson v. Kentucky when it exercised a peremptory challenge against the only black member of the venire summoned to sit as potential jurors at her trial on a state charge of armed robbery. Before the supreme court turned her down, the same claim was rejected by both the state trial judge in Rock County, Wisconsin, and the Wisconsin Court of Appeals. Accordingly, Lamon’s claim has been rejected, and her robbery conviction affirmed, by all three levels of the Wisconsin judicial system.
Having exhausted her state remedies, Lamon moved to federal court where her petition for habeas corpus met with a similar lack of success. Chief Judge Rudolph T. Randa of the United States District Court for the Eastern District of Wisconsin rejected her claim in 2005. Lamon now appeals that decision to us, but given the present posture of the case — a collateral review subject to the stringent limitations of AEDPA where we are not free to simply pick sides between the Wisconsin Supreme Court majority and dissenting opinions — we conclude that her losing streak must continue.
The facts of Ms. Lamon’s case are simple, and not really important to the issue she presents to us. But to put the case in perspective, here is what it was all about: Lehman Jones (who like Lamon is an African-American) was driving home one night when Lamon flagged him down and asked to be taken to a telephone; while together in the car, and with Lamon pointing an object at his side that he thought was a *1099 gun, Jones surrendered his wallet; Lamon then left the car and retreated to a car being driven by an accomplice. Armed robbery charges against her (as a repeat offender) were issued a few days later.
During the jury selection process, the prosecutor exercised a peremptory strike against Dondre Bell, a resident of Beloit, Wisconsin, without questioning him individually. Lamon challenged the strike under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the judge held a hearing in chambers. The judge assumed Lamon had established a prima facie case of discrimination because Bell was the only black member of the venire. Accordingly, the judge asked the prosecutor to explain her strike.
The prosecutor responded that she doubted Bell’s veracity. She explained that her office prosecuted many Beloit residents named Bell and that a computer check the previous day revealed numerous police contacts at Bell’s address, including one in which a “Mrs. Bell” reported that her husband had stolen her car to support his drug habit. And, the prosecutor continued, Bell did not respond affirmatively when she asked if any relative or close friend had been convicted of a crime or been a victim of crime. This, she said, caused her to doubt Bell’s credibility. Her suspicions increased, she explained, because Bell simply wrote “varies” on a questionnaire form that asked him to detail his employment over the past 5 years.
Lamon responded that “Bell” is a common name and that it was unknown how long Dondre Bell was living at his current address. It followed, Lamon insisted, that the prosecutor should have individually questioned Bell about her concerns before striking him. Lamon then asked the judge to individually question Bell before ruling on her Batson objection. The judge asked the prosecutor why she had not questioned Bell, and she iterated her concern that Bell would not have been forthright and also stated that she did not want to “single him out.” The judge declined to question Bell and concluded, ‘Well, I think the State has made its case and it does have just cause for the strike.”
After Lamon was convicted, as we said, her appellate claims (including several besides her Batson argument) were denied, first by the trial court, next by the Wisconsin Court of Appeals, State v. Lamon, 646 N.W.2d 854 (Wis.Ct.App.2002) (per curiam), and finally by the Wisconsin Supreme Court. State v. Lamon, 262 Wis.2d 747, 664 N.W.2d 607 (Wis.2003).
The Wisconsin Supreme Court rejected Lamon’s contention that the trial judge was not in a position to adequately assess the prosecutor’s credibility since she had not questioned Bell individually before exercising her strike and the judge was unwilling to question Bell himself before ruling on the issue. The court correctly explained that Batson outlines a three-step process for determining if a peremptory strike violates the Equal Protection Clause: (1) the defendant must establish a prima facie case that the strike was racially motivated, (2) the burden then shifts to the prosecutor to come forward with a race-neutral reason for the strike, and (3) the trial judge must assess the credibility of the explanation and determine whether purposeful discrimination has been established. Id. at 615-16 (citing Batson, 476 U.S. at 96-98, 106 S.Ct. 1712). Applying this test to Lamon’s case, the court concluded that the trial judge’s ruling, although quite skimpy, sufficiently showed that he assessed the prosecutor’s credibility and not merely, as the dissent contended, whether the prosecutor’s explanation was race-neutral. Id. at 624; see id. at 639-40 (Bradley, J., dissenting). The court held that more *1100 elaborate findings were not required. Id. at 624 (citing Miller-El v. Cockrell, 537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (hereafter Miller-El I) (“We adhere to the proposition that a state court need not make detailed findings addressing all the evidence before it.”)). The court then held that the trial judge’s finding of no discriminatory intent was not clearly erroneous. As the court explained, it is counsel’s credibility that the trial judge must assess, and while it might have been helpful for the judge to have heard Bell’s responses to questioning by the prosecutor before the strike was exercised, under the totality of the circumstances, that was not necessary. Id. at 620-21 (citing Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). The court reasoned that the entire record, including the results of the computer check and Bell’s answer to the employment history question on the questionnaire, supported the trial judge’s decision to credit the prosecutor’s facially nondiscriminatory reasons for exercising the strike as she did. Id. at 627-28.
Three justices dissented in two opinions. All three joined in parts I and II of Chief Justice Shirley S. Abramson’s dissent, which argued that the trial judge failed to fulfill his duty, under Batson’s third step, to assess the credibility of the prosecutor’s explanation and to include detailed findings in the ruling itself. Id. at 628-35 (Abrahamson, C.J., dissenting); id. at 39-JO (Bradley, J., dissenting). Going further than the other two dissenters, the chief justice also argued that generating a police report on Bell’s address was itself evidence of discrimination, and that the trial judge had a duty to inquire, sua sponte, whether the prosecutor conducted similar background investigations on white members of the venire. Id. at 635-39. The court itself answered this last point by noting that the burden of persuasion lay with Lamon, who did not pursue this inquiry at the Batson hearing. (Id. at 628 n. 13.) (At oral argument before us, Lamon conceded that the trial court had no such duty.)
In this appeal, Lamon argues that: (1) it is impossible to discern from the trial judge’s brief ruling whether he ever evaluated the prosecutor’s credibility — and the truthfulness of her explanation for her strike — as required under Bat-son’s third step, (2) even if the trial judge made a determination as to the prosecutor’s credibility, his conclusion should be disregarded because he ruled without questioning Bell individually, and (3) the trial judge erred in his factual finding that the strike was not discriminatory. To prevail on these arguments, Lamon bears a heavy burden. She must show that the adjudication of her claim by the Wisconsin Supreme Court “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States,” 28 U.S.C. § 2254(d)(1), or “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” Id. § 2254(d)(2); see also Rice v. Collins, — U.S. —, —, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006). In other words, she must establish not only that the court was wrong, but that it applied Supreme Court precedent in an “objectively unreasonable manner,” Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), that fell “well outside the boundaries of permissible differences of opinion.” See Hardaway v. Young, 302 F.3d 757, 762 (7th Cir.2002). Although Lamon directly attacks the trial judge’s Batson ruling, we evaluate the decision of the last state court to rule on the merits of a prisoner’s claim, Charlton v. Davis, 439 F.3d 369, 374 (7th Cir.2006), *1101 here the opinion of the Wisconsin Supreme Court. As a result, Lamon can prevail only if the Wisconsin Supreme Court unreasonably applied precedent from the Supreme Court of the United States in upholding the trial judge’s decision.
We start with the trial judge’s ruling. Lamon argues, echoing the dissenters, that the Wisconsin Supreme Court erred because, in her view, the trial judge’s terse ruling casts doubt on whether he ever assessed the credibility of the prosecutor and her explanation as Batson’s third step requires. But we can infer from the record that the trial judge engaged in the step-three inquiry: the court observed the prosecutor give her explanation, asked her several follow-up questions that were aimed at testing her credibility, allowed Lamon the opportunity to respond, and then ruled. Although it is certainly good practice to explain why a proffered explanation has been found credible, we cannot conclude that the Wisconsin Supreme Court unreasonably applied clearly established Supreme Court precedent in declining to require anything further of the trial judge in this case. In fact, the court expressly noted the Supreme Court’s pronouncement that “a state court need not make detailed findings addressing all the evidence before it” so long as the relevant inquiry is undertaken. Lamon, at 780-81, 664 N.W.2d 607, (citing Miller-El I, 537 U.S. at 347, 123 S.Ct. 1029).
Next we consider the process engaged in by the trial judge in deciding to credit the prosecutor’s reasons for striking Bell from the jury pool. Lamon argues that she was denied a complete Batson hearing because the judge did not personally question Bell. She asserts that the judge failed to follow the mandate set forth in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005) (hereafter Miller-El II), which instructs trial judges to consider “all relevant circumstances” at the third step of the Batson analysis.
Although we agree that a trial judge must analyze the relevant evidence before determining if a prosecutor’s race-neutral explanation is credible, see Coulter v. Gilmore, 155 F.3d 912, 921 (7th Cir.1998), Lamon incorrectly assumes that Bell’s responses to questions posed by the judge after the strike would have proven relevant to the inquiry. Lamon’s attorney explained that he “questioned the factual accuracy of [the prosecutor’s] reasons” and “wanted to use [Bell’s] answers to prove his point,” but he aims at the wrong target. The relevant question during the third step of the Batson inquiry is whether a strike was racially motivated. Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Williams v. Chrans, 957 F.2d 487, 491 (7th Cir.1992). It follows that Batson and its progeny direct trial judges to assess the honesty — not the accuracy — of a proffered race-neutral explanation. See Purkett v. Elem, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) (admonishing lower court for focusing on the “reasonableness of the asserted nonracial motive ... rather than the genuineness of the motive” (emphasis in original)); United States v. George, 363 F.3d 666, 674 (7th Cir.2004) (explaining that under Batson “the government’s proffered reason for the strike need not be particularly persuasive, or even based on quantifiable data, so long as it is not pretextual”); United States v. Montgomery, 210 F.3d 446, 453 (5th Cir.2000). (“[T]he ultimate inquiry for the judge is not whether counsel’s reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based.”).
Reflecting the limited nature of the inquiry, the procedures required in assess *1102 ing counsel’s motive are limited as well. In Batson the Court expressly declined to mandate “particular procedures.” Batson, 476 U.S. at 99, 106 S.Ct. 1712. Since then the Court has explained that observing the “demeanor of the attorney” will often provide the “best evidence” of purposeful discrimination. See Hernandez, 500 U.S. at 365, 111 S.Ct. 1859. In that vein, there certainly does not exist any “clearly established” Supreme Court precedent suggesting that a party has the right to call stricken panelists as witnesses and question them during a Batson hearing. Rather, we have held that Batson does not require the use of evidentiary proceedings which would be unlikely to produce evidence bearing on counsel’s credibility. See Williams, 957 F.2d at 491. In fact, in Williams we affirmed the denial of the defendant’s request to question a stricken panelist — the same request that Lamon made — because it “would not have been probative of whether ... the prosecution sought to exclude [the panelist] on the basis of race.” Id.
Here, likewise, Lamon had the opportunity to discredit the prosecutor, and questioning Bell would not have further divulged whether the prosecutor sincerely doubted his veracity. After all, the prosecutor’s concerns were based on Bell’s silence. And even if questioning Bell revealed that he was unrelated to the Bell family that the prosecutor had in mind, that fact would not have shed light on whether the prosecutor honestly believed that Dondre Bell was a member of that family. As we said, the law is clear that it is the honesty of the prosecutor’s explanation — and that alone — which a trial judge must assess at the third step of the Batson analysis. Accordingly, we cannot say that the Wisconsin Supreme Court unreasonably applied federal law when it held that the trial judge conducted an adequate, although minimal and not a model to be followed, step-three inquiry into Lamon’s Batson claim.
Lastly, we consider whether the trial court erred in finding that the strike was not discriminatory. Citing Miller-El II, Lamon contends that the prosecutor’s failure to individually question Bell is itself evidence of discrimination. But on collateral review, state-court factual findings are presumed correct; the petitioner has the burden of rebutting the presumption by “clear and convincing evidence.” 28 U.S.C. § 2254(e)(1); see also Rice, 126 S.Ct. at 974. Lamon has not met this burden. This case is nothing like Miller-El II where a side-by-side comparison of the voir dire testimony revealed that the prosecutor’s reasons for striking black panelists applied with equal force to white panelists who were selected as jurors, Miller-El II, 125 S.Ct. at 2325-26, leading the Court to conclude that the prosecutor’s explanation “reeks of afterthought.” Id. at 2328. Much to the contrary, the check run on Bell’s address along with the vague answer given to the prior employment question rendered credible to the trial judge the prosecutor’s honest, even if possibly mistaken, belief that Bell would not have answered additional questions honestly.
Accordingly, we AFFIRM the district court’s denial of Lamon’s petition for a writ of habeas corpus.