COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

UNPUBLISHED

GARY NATHANIEL BLOWE, JR.

                                         MEMORANDUM OPINION[*] BY
v.       Record No. 1189-18-2              JUDGE GLEN A. HUFF
                                           OCTOBER 8, 2019
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FLUVANNA COUNTY
Humes J. Franklin, Jr., Judge Designate

        Matthew L. Engle (Donovan & Engle, PLLC, on briefs), for
        appellant.

        Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


     Gary Nathaniel Blowe, Jr. ("appellant") appeals his convictions that arose out of his

attempt to steal firearms and the gun battle that erupted when the occupants of the property

returned while appellant and his accomplices were still there.  After a jury trial, appellant was

convicted of aggravated malicious wounding, conspiracy to commit grand larceny of a firearm,

two counts of attempted malicious wounding, and three counts of use of a firearm in the

commission of a felony.  The trial court imposed the jury's sentence of forty-two years'

imprisonment.[1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] A charge of possession of a firearm by a felon was tried by the trial court on the same
evidence as was presented to the jury.  The trial court separately sentenced appellant to five
years' imprisonment with all five years suspended on that charge.  Appellant does not challenge
that conviction in this appeal.

Appellant raises four assignments of error. First, he contends that the Double Jeopardy Clause prohibits one of his convictions for use of a firearm in the commission of a felony because he was convicted for two counts based on only one underlying felony. Second, he similarly contends the Double Jeopardy Clause bars one of his convictions for attempted malicious wounding because both charges were for the attempted malicious wounding of the same person arising from the same gun battle, constituting a single incident and supporting only a single conviction. Third, he claims the evidence was insufficient to support his conviction for aggravated malicious wounding because the Commonwealth failed to establish that the "foot drop" suffered by the victim as a result of being shot was a "significant physical impairment." Finally, he contends that the trial court erred in overruling his Batson objection to the prosecution's use of a peremptory challenge to remove one of only two African-American jurors from the jury.

Appellant, however, has failed to preserve his double jeopardy claim regarding the use of a firearm charge. He also has failed to preserve his Batson claim. For his other double jeopardy claim, the victim was shot at during several separate and discrete parts of the gun battle which is sufficient to constitute separate attempted malicious wounding offenses. Finally, for the remaining assignment of error, the "foot drop" suffered by the victim, which impedes the victim's ability to walk and requires his wearing an orthotic boot, is a "significant physical impairment," and the evidence is sufficient to support appellant's convictions. Therefore, this Court affirms the trial court.

## I. BACKGROUND

"This Court considers 'the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'" Hawkins v. Commonwealth, 64 Va. App. 650,

652 (2015) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). So viewed the evidence is as follows:

Appellant, Dante Givens, Thomas Jackson, and John Abbitt conspired to steal guns from the apartment over a garage shop owned by Garnette Bourne. Givens waited nearby while the other three entered the shop because Bourne knew him, and he did not want to be identified. When they arrived, the shop was vacant. The three men went upstairs to the apartment with a sledgehammer to break into the safe where the guns were stored. They discovered the safe was already open and the guns were gone.

Appellant then headed back downstairs through the shop. Bourne returned to the shop as appellant was coming down the stairs. As soon as Bourne saw appellant, appellant began shooting at Bourne. Bourne was shot in the side of his knee while trying to find cover. Appellant continued to shoot at Bourne as Bourne was crawling on the floor to avoid the gun fire. The other co-conspirators in the apartment then smashed a window and leapt out of the apartment.

Within a few moments, while shots were still being fired, Bourne's brother, Scott Bourne,[2] and friend, Jack Gillespie, arrived. Scott entered the garage and took cover on the floor. Gillespie got off his four-wheeler and went to the side of the building to confront an individual who was shooting at him. After Gillespie returned fire with a few shots, the individual fled, and Gillespie came back and entered the shop. Gillespie observed appellant retreat behind a door into the stairway. While Gillespie took cover, he heard shots being fired through the wall into the shop.

Soon Gillespie heard someone shooting into the shop from outside. Bourne was struck in the leg a second time. Gillespie turned to see who was shooting, and the shooter retreated when

---

[2] To avoid confusion, the remainder of this opinion will refer to him as "Scott."

he saw Gillespie's gun. After about a minute, more shots were fired from outside. Gillespie then observed appellant in a sport utility vehicle driving away while shooting out the window at Gillespie and the shop.

Scott then retrieved a firearm and saw Abbitt outside the shop. The two exchanged gunfire until Scott ran out of ammunition and Abbitt fled into the woods.

After amendment of the original indictments, appellant was tried by a jury for: aggravated malicious wounding of Bourne; conspiracy to commit grand larceny of a firearm; two counts of attempted malicious wounding of Jack Gillespie; and three counts of use of a firearm in the commission of a felony.[3]

During jury selection, the Commonwealth used a peremptory challenge to strike one of the only two remaining African-American prospective jurors. Off the record and before the jury was sworn, appellant raised a Batson challenge to the Commonwealth's use of the peremptory challenge of the African-American prospective juror. After the jury was sworn, the parties memorialized appellant's objection on the record. Appellant argued only that the Commonwealth had struck an African-American prospective juror when there were few in the venire and only two left at that time. The Commonwealth responded that "when the Court asked the question about truthfulness and law enforcement, she rolled her eyes and visibly made a change in appearance in an almost sneering way." Appellant made no further argument, and the trial court noted it denied the motion.

At appellant's trial, Bourne testified that he still had problems with his foot. He testified that his foot "just swings down. If I don't keep a good high-top boot on and I go out and a

---

[3] The predicate offense for one of the counts was a malicious wounding, the predicate offenses of the other two counts were aggravated malicious wounding.

pebble gets under my foot, I'll twist my ankle. It will just flop over sideways." He testified this happens to him several times a day.

Both Dr. James Calland, the trauma surgeon who saw Bourne on the day of shooting, and Dr. Randall Bashore, Bourne's regular physician, testified. Dr. Calland described Bourne's injury on the day of the shooting. Bourne had two gunshot wounds on his left leg below the knee. He did not have any significant damage to the bones in his leg, but he had "foot drop" from a damaged nerve. Dr. Bashore confirmed that Bourne's foot drop had not improved in the year since the shooting and was unlikely to ever heal.

When an individual has foot drop, the muscles in the leg cannot pull up the front of the foot, so the individual will constantly catch their toes when walking. Such an individual requires an orthotic brace or boot to walk normally without tripping. Dr. Calland testified that Bourne was fitted with a brace before he left the hospital. Dr. Bashore testified that Bourne continued to need the orthotic, having just prescribed a new orthotic to replace a boot Bourne had worn for several months.

Appellant presented no evidence, but at the close of the Commonwealth's case, he moved to strike the evidence. Relevant to this appeal, he argued three things. First, he argued that Bourne's injury was not a "significant physical impairment." Second, he argued that one of the "use of a firearm" charges should be stricken, saying:

> There's also two uses of a firearm charges to commit aggravated
> malicious wounding; of course, my motion to strike on the
> underlying felony would cover those anyway, but I think even if
> the Court overruled my motion, there should only be one of those
> use of a firearm to commit aggravated malicious wounding.

Third, he argued one of the attempted malicious wounding charges should be stricken, stating:

> It appears to me that there's two attempted malicious wounding
> charges on Mr. Gillespie, and even if the Court feels that the
> Commonwealth has met its burden as it pertains to those two cases,

I would ask that the Court consider finding those duplicitous; in other words, they're charging the same thing twice.

The trial court denied the motion to strike. The jury convicted appellant on all the charges and recommended a total sentence of forty-two years' imprisonment. The trial court imposed the jury's recommended sentence. This appeal followed.

## II. PROCEDURAL DEFAULTS

Rule 5A:18 provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or . . . to attain the ends of justice." "Rule 5A:18 applies to bar even constitutional claims." Ohree v. Commonwealth, 26 Va. App. 299, 308 (1998). In order to preserve an issue for appeal, "an objection must be timely made and the grounds stated with specificity." McDuffie v. Commonwealth, 49 Va. App. 170, 177 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621 (1986)). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." Bass v. Commonwealth, 70 Va. App. 522, 538 (2019) (quoting Roadcap v. Commonwealth, 50 Va. App. 732, 741 (2007)). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*). "The purposes of Rule 5A:18 are to allow the trial court the opportunity to 'take appropriate action to correct the error' and to "'avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'"" Bethea v. Commonwealth, 68 Va. App. 487, 498 (2018) (quoting Maxwell v. Commonwealth, 287 Va. 258, 264-65, 267 (2014)).

### A. Use of a Firearm Double Jeopardy Claim

Appellant claims that his conviction for two counts of use of a firearm in the commission of a felony violates the Double Jeopardy Clause because they are both predicated on the same

underlying felony, the aggravated malicious wounding of Bourne.  He claims that, at most, Bourne suffered one significant and permanent injury, and therefore there could only be one aggravated malicious wounding.  Although appellant moved to strike one of the two use of a firearm counts, this Court concludes that he failed to preserve his double jeopardy claim.

His argument to the trial court was as follows:

> There's also two uses of a firearm charges to commit aggravated malicious wounding; of course, my motion to strike on the underlying felony would cover those anyway, but I think even if the Court overruled my motion, there should only be one of those use of a firearm to commit aggravated malicious wounding.

Appellant never explained why he thought there should be only a single charge.  He did not mention double jeopardy or explain that he believed there was only a single predicate offense.  Even assuming that the trial court had been alerted to a potential double jeopardy issue by counsel's saying "there should only be one" of the charges, appellant never explained he was arguing that there was only one significant physical injury to support a single aggravated malicious wounding predicate offence.[4]  Bourne had been shot twice, and appellant did not

---

[4] Even in his initial brief to this Court, appellant merely asserted "there was a single aggravated malicious wounding," therefore "there can only be one use of a firearm conviction in the commission of that offense."  He did not explain he was contending there was only a single aggravated malicious wounding because there was only one "permanent and significant injury" until his reply brief.  Until the clarification, appellant appeared to be arguing that he could not be convicted on two counts of use of a firearm in the commission of an aggravated malicious wounding because he was only charged with and convicted of one count of aggravated malicious wounding.

Although such an argument has been soundly rejected by this Court, <u>Davis v. Commonwealth</u>, 4 Va. App. 27, 30 (1987) ("There is no language in the statute which suggests that the legislature intended that an accused must be charged and prosecuted for the underlying felony."), without his further explanation in the reply brief, that argument is all he appeared to have made, either in this Court or at the trial court.  Therefore, he has failed to preserve the argument there was only one "permanent and significant injury."  <u>Edwards</u>, 41 Va. App. at 760 ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.").

explain why the two shots, collectively resulting in the permanent foot drop condition, would not support two aggravated malicious wounding offenses and thus two use of a firearm charges.

Without timely clarification, the issue now raised could not have been effectively addressed by the trial court. By failing to raise his argument with more specificity, appellant deprived the Commonwealth and the trial court of the opportunity to address the issue. Cox v. Commonwealth, 65 Va. App. 506, 515 (2015) ("[A] specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding." (quoting Weidman v. Babcock, 241 Va. 40, 44 (1991))).

Therefore, appellant did not sufficiently alert the trial court to the argument he makes on appeal and this Court will not consider it.

### B. Batson Challenge

Appellant argues the trial court erred by denying his Batson challenge. Under Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny, the prosecutor may not discriminate on the basis of race in the use of peremptory challenges. To succeed on a Batson challenge in this context, the defendant must make out a *prima facie* case that the prosecutor has improperly used race as the reason for its strike of the prospective juror. Hopkins v. Commonwealth, 53 Va. App. 394, 398 (2009). "Once a *prima facie* case is made, the Commonwealth bears the burden of producing a race-neutral explanation for striking the potential juror." Id. "The defendant can then argue the Commonwealth's explanation is purely a pretext for unconstitutional discrimination." Id. The defendant retains, however, the burden of persuasion for establishing the Commonwealth discriminated in the use of its strike throughout the whole test. Id. Where, as here, the trial court requests the Commonwealth respond to the defendant's claim, and the Commonwealth does so, this Court assumes, without deciding, that the defendant established a *prima facie* case.

Appellant claims that the trial court erred because it did not rule on the plausibility of the Commonwealth's race-neutral explanation. The Commonwealth explained to the trial court that it struck the juror because she "rolled her eyes and visibly made a change in appearance in an almost sneering way" when the trial court "asked the question about truthfulness and law enforcement." Appellant argues that the Commonwealth's reason for striking the juror was not plausible because the court did not ask such a question, although the defendant did ask something similar. In essence, he argues that the trial court did not rule on whether the Commonwealth's reason was pretextual.

Appellant, however, never presented this argument to the trial court. After the Commonwealth provided its reason, appellant offered no argument to rebut the Commonwealth's race-neutral reason for exercising its strike. If appellant had argued before the trial court with the same argument that he makes here, the trial court could have addressed who asked what and whether the error was significant.

Only the trial court had the ability to determine whether the Commonwealth's explanation of the prospective juror's body language was pretextual. Moreover, the discrepancy between the Commonwealth's explanation at trial and the record of who asked what question does not necessarily mean the Commonwealth's explanation was pretextual. Bethea v. Commonwealth, ___ Va. ____, _____ (Aug. 28, 2019) ("[A] mere mistake, in and of itself, is not a pretext. . . . 'Batson and its progeny direct trial judges to assess the *honesty*—not the accuracy—of a proffered race-neutral explanation.' A Batson challenge based upon the 'factual accuracy' of the race-neutral explanation 'aims at the wrong target.' The right target is the 'credibility of the prosecutor's explanation' because that credibility determination 'goes to the heart of the equal protection analysis.'" (footnote omitted) (quoting Lamon v. Boatwright, 467 F.3d 1097, 1101 (7th Cir. 2006), and Miller-El v. Cockrell, 537 U.S. 322, 340 (2003))).

The trial court was in the best position to determine whether the flaws in the Commonwealth's reason were significant or the type of mistake that is understandable and easily made when trying to remember all the details of *voir dire*. Id. at _____ ("[T]he judicial 'evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."'" (quoting Hernandez v. New York, 500 U.S. 352, 365 (1991))). By failing to argue the Commonwealth's reasons were pretextual, appellant deprived the trial court of the ability to address the sincerity of the Commonwealth's race-neutral reason. Therefore, under Rule 5A:18 appellant waived his Batson argument, and this Court will not consider it. See Martinez v. Commonwealth, 42 Va. App. 9, 20-21 (2003) (holding that the defendant waived a Batson challenge for failing to argue the Commonwealth's explanation for the strike was pretexual).

### C. Miscarriage of Justice

Appellant argues this Court should utilize the ends of justice exception to Rule 5A:18. "The ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." Copeland v. Commonwealth, 42 Va. App. 424, 442 (2004).

> To invoke the ends of justice exception to Rule 5A:18, the record must "affirmatively show[ ] that a miscarriage of justice has occurred, not . . . merely . . . that a miscarriage might have occurred." To satisfy this burden, an appellant must show "more than that the Commonwealth failed to prove an element of the offense . . . . The appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense[,] or the record must affirmatively prove that an element of the offense did not occur."

Moore v. Commonwealth, 59 Va. App. 795, 814 (2012) (quoting Marshall v. Commonwealth, 26 Va. App. 627, 636-37 (1998)).

Appellant argues he received a significantly longer sentence than his co-conspirators who accepted a plea bargain and testified against him. He alleges that this difference amounts to a

miscarriage of justice. However, he does not argue the evidence proves an element of the crime did not occur. He also does not explain how the conduct for which he was convicted was not a crime. Alleged unfairness in sentencing is not a reason to invoke the ends of justice exception to Rule 5A:18. Appellant failed to preserve two of his assignments of error, and this Court will not consider them.

## III. ANALYSIS

Appellant has two remaining assignments of error. First, he claims one of his convictions for the attempted malicious wounding of Jack Gillespie violates the Double Jeopardy Clause. Second, he contends the evidence was insufficient to sustain his conviction for aggravated malicious wounding, because the victim's injury did not result in a "severe and permanent physical impairment."

### A. Attempted Malicious Wounding Double Jeopardy Claim

#### 1. Standard of review

"We review de novo claims that multiple punishments have been imposed for the same offense in violation of the double jeopardy clause." Lawlor v. Commonwealth, 285 Va. 187, 227 (2013). Nevertheless, "determination of whether acts constitute a single continuing offense or separate offenses is a factual finding that we will not reverse unless it is plainly wrong or without evidence to support it." Jin v. Commonwealth, 67 Va. App. 294, 304-05 (2017).

#### 2. Analysis

Appellant contends that one of his attempted malicious wounding convictions violates the Double Jeopardy Clause because he only participated in one attempted malicious wounding of Gillespie. Appellant contends that he is being punished twice for a single offense because appellant only shot at Gillespie as appellant was driving away. Moreover, he argues that even if a concert of action theory makes him responsible for his accomplices' actions, the entire gun

battle was a single course of conduct that can only support a single attempted malicious wounding. The Commonwealth argues that appellant is responsible for his accomplices' actions under a concert of action theory. It further argues that the shots fired at Gillespie as he arrived and the shots fired as appellant drove off constituted separate acts of attempted malicious wounding supporting separate convictions.[5] This Court agrees with the Commonwealth.

"The Double Jeopardy Clause of the United States Constitution provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" Johnson v. Commonwealth, 292 Va. 738, 741 (2016) (quoting U.S. Const. amend. V.). "The Double Jeopardy Clauses of the United States and Virginia Constitutions protect against multiple punishments for the same offense." Roach v. Commonwealth, 51 Va. App. 741, 748 (2008). "Subjecting an accused to multiple punishments for the same offense violates both state and federal constitutional protections against double jeopardy." Id. Nevertheless, "[t]he Double Jeopardy Clause is not abridged if an accused is subjected to punishment for two offenses that are supported by separate and distinct acts." Id.

Thus, whether appellant was permissibly convicted of two attempted malicious wounding offenses turns on whether the entire gun battle was one single continuous attempt to maliciously wound Gillespie, or if there were separate and distinct acts within the battle that constitute multiple attempts. "A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." Hodnett v. Commonwealth, 56 Va. App. 234, 237 (2010) (quoting Thomas v.

---

[5] The Commonwealth also argues that each pull of the trigger represents a separate attempted malicious wounding. Because this Court concludes that the shooting as Gillespie arrived and the shooting as appellant drove off were separate acts supporting separate convictions under the unique circumstances of this case, this Court need not resolve whether, in every circumstance, each pull of the trigger is individually a separate act of attempted malicious wounding.

- 12 -

Commonwealth, 38 Va. App. 319, 324-25 (2002)). "In determining whether the conduct underlying the convictions is based upon the 'same act,' the particular criminal transaction must be examined to determine whether the acts are the same in terms of time, situs, victim, and the nature of the act itself." Jin, 67 Va. App. at 303-04 (quoting Hall v. Commonwealth, 14 Va. App. 892, 898 (1992)).

For example, in Jin, this Court affirmed two attempted murder convictions. Id. at 307. In Jin, the defendant attempted to run over his wife with his car and failed only because her brother pulled her out of the way. After she had returned inside—but only a few minutes later—he struck his wife with a hammer multiple times. She only survived because bystanders restrained the defendant. Nothing indicated that the defendant gave up on trying to kill his wife between the two attempts on her life. The defendant only took the time necessary to get a new tool before attacking again. Nevertheless, this Court concluded "the hammer attack 'involved a new formation and execution of purpose'" which supported a second attempted murder conviction. Id. (quoting Hodnett v. Commonwealth, 56 Va. App. 234, 238 (2010)).

Similarly, in Hodnett, this Court held that when an inmate threw a cup filled with the contents from a toilet on a guard, immediately refilled the cup, and threw it on the guard again, the evidence supported two convictions for assault and battery on a law enforcement officer. 56 Va. App. at 237-38. This Court reasoned that the first assault was complete when the contents of the cup struck the guard so that when the inmate refilled the cup he began a whole new act.

Here, one of appellant's accomplices[6] shot at Gillespie when Gillespie arrived.[7] Gillespie confronted that accomplice and that accomplice retreated, ending that attempt to maliciously wound Gillespie. Like in Hodnett and in Jin, there was a definitive end to one attack on Gillespie. Gillespie was able to move from outside the garage to obtain cover inside the garage. He was then shot at in the garage.[8] Appellant then retreated through the apartment, apparently out the same window his accomplices had earlier used, and went to his getaway vehicle. As he was driving away, he shot back at Gillespie. This was a new attack, separated in time and location, with a distinct break in the action, from the first attack on Gillespie.

---

[6] Appellant objects that the Commonwealth's story of who shot at Gillespie has changed repeatedly before this Court. Nevertheless, the identity of who shot at Gillespie is irrelevant. Appellant's guilt is the same whether he shot at Gillespie when Gillespie arrived or if one of his accomplices did. See Spradlin v. Commonwealth, 195 Va. 523, 528 (1954) ("If there is concert of action with the resulting crime one of its incidental probable consequences, then whether such crime was originally contemplated or not, all who participate in any way in bringing it about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime.").

[7] The jury was instructed on concert of action, allowing appellant to be held responsible for the actions of his accomplices. At oral argument, appellant argued that a concert of action theory cannot apply to support appellant's conviction. He argued that no case law permits an individual to be convicted as both the actor and under a concert of action theory. Appellant is correct that the Double Jeopardy Clause would forbid convicting someone both as the actor and under a concert of action theory *for the same act*. Here, however, there are separate acts. Appellant was directly responsible as the actor for an attempted malicious wounding of Gillespie because appellant shot at Gillespie while appellant was driving away. Appellant was responsible for a separate attempted malicious wounding of Gillespie under a concert of action theory because one of his accomplices shot at Gillespie when Gillespie first arrived.

[8] Although the Commonwealth does not assert it, these shots at Gillespie also might constitute a third separate attempt to maliciously would Gillespie. Gillespie testified appellant "was shooting back through the walls back into the shop where I was at." The shots through the wall in the garage were separated from the first attack by the first shooter's retreat and Gillspie's movement to the garage. They were similarly separated from appellant's final shots at Gillespie as appellant was driving away. After shooting at Gillespie through the apartment walls, appellant went to the second floor, exited through the window, and got into his getaway vehicle. As appellant was driving away, he fired back towards the garage at Gillespie. In the light most favorable to the Commonwealth, this is sufficient to find the acts were "separate and distinct" and able to support multiple attempted malicious wounding convictions.

Appellant argues that because intent is an element of attempted malicious wounding, a single continuous intent to wound Gillespie throughout the battle prevents conviction for two counts of attempted malicious wounding. In Jin, however, there was no indication the defendant gave up on his intent to murder his wife. Rather, after the thwarted first attack failed, he almost immediately set out to attack again. Similarly, although appellant and his accomplices may have had a singular intent to maliciously wound Gillespie, they attacked Gillespie, retreated, and then attacked again. This was a new "execution of purpose." Appellant should "not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior." Jin, 67 Va. App. at 307 (quoting Carter v. Commonwealth, 16 Va. App. 118, 129 (1993)). Thus, the evidence supports the trial court's conclusion that there were two attacks on Gillespie. This Court affirms.

### B. Sufficient Evidence of a Significant and Permanent Physical Impairment

In his remaining assignment of error, appellant claims that the evidence was insufficient to support his conviction for aggravated malicious wounding. This Court concludes, however, that the victim's "foot drop" is a "permanent and significant physical impairment." Thus, the evidence is sufficient to support his conviction.

### 1. Standard of review

"When the sufficiency of the evidence is challenged on appeal, '"we presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it."'" Stevens v. Commonwealth, 46 Va. App. 234, 248 (2005) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)), aff'd, 272 Va. 481 (2006). This Court "determine[s] whether the evidence, viewed in the light most favorable to the prevailing party, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Cottee v. Commonwealth, 31 Va. App. 546,

554-55 (2000). This Court "must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Id. at 555 (quoting Watkins v. Commonwealth, 26 Va. App. 335, 349 (1998)).

## 2. Analysis

Appellant contends that the evidence is insufficient to sustain his conviction for aggravated malicious wounding because the victim's injury did not result in a "permanent and significant physical impairment." He argues that the victim only suffered two gunshots and the resulting "foot drop." The victim's doctors did not testify that the "foot drop" the victim suffered was a "significant injury." He argues that, although the victim must use a foot brace for walking properly, his injury is not significant within the meaning of the Code. Appellant concedes that the victim's injury is permanent.

To sustain a conviction for aggravated malicious wounding, the Commonwealth must establish that the victim suffered a "permanent and significant physical impairment." Code § 18.2-51.2. A physical impairment is "any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury." Newton v. Commonwealth, 21 Va. App. 86, 90 (1995) (borrowing language from former Code § 51.5-3).

This Court has considered several cases addressing the question of what constitutes a significant physical impairment. For example, in Newton this Court affirmed the trial court's conclusion that the victim's cosmetic disfigurement, significant facial scaring from wounds that required ten to twenty stitches, was a significant physical impairment. Id. at 90-91. In Martinez v. Commonwealth, 42 Va. App. 9, 24-25 (2003), this Court concluded the victim suffered a "permanent and significant physical impairment" when the victim was shot in the shoulder. At the trial, two years later, the victim did not have full use of her arm and hand. "[S]he did not

have a 'real good grip' because her index finger and thumb 'don't work right.'" Id. at 25. She had trouble buttoning her clothes, handling money, or doing anything tedious with her hand. Id. This Court held that the evidence supported a conclusion she suffered a "permanent and significant physical impairment." Id.

Here, the victim's injury caused a "significant physical impairment." Like in Martinez, the victim's injury limits his ability to perform activity that he must undertake every day. The two gunshots to the victim's leg damaged a nerve that has caused "foot drop." He cannot raise his foot normally when walking. He must wear an orthotic boot while walking to prevent his toes from "always catching onto everything" causing him to trip. Moreover, if the cosmetic disfigurement in Newton is a "significant physical impairment," an injury that does more than disfigure but actually impedes daily living—requiring an orthotic boot to walk without catching his toes and tripping—is likewise significant. The evidence supports the trial court's decision rejecting appellant's motion to strike, and this Court affirms.

## IV. CONCLUSION

Appellant failed to present one of his Double Jeopardy Clause arguments and his Batson argument to the trial court. Therefore, they are waived under Rule 5A:18, and this Court will not consider them. Appellant's remaining Double Jeopardy Clause argument fails because there were at least two separate and distinct attacks on Gillespie, supporting two attempted malicious wounding convictions. For his only remaining assignment of error, the evidence supports appellant's conviction for aggravated malicious wounding. The victim cannot walk normally and must utilize an orthotic boot. The limitation on the victim's daily activity inherent in his "foot drop" is a "significant physical impairment." For the foregoing reasons, this Court affirms.

Affirmed.